# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KIMBERLY BECK,

        Plaintiff,

v.                                      No. CV 19-401 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Kimberly Beck's *Motion to Reverse and/or Remand* (the "Motion"), (Doc. 21), filed October 21, 2019; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 26), filed February 21, 2020; and Ms. Beck's *Reply in Support of Motion to Reverse and/or Remand* (the "Reply"), (Doc. 27), filed March 6, 2020.

Ms. Beck filed an application for Title II Disability Insurance Benefits on July 10, 2015. (Administrative Record "AR" 242). In her application, Ms. Beck alleged disability beginning March 10, 2015. *Id.* Ms. Beck claimed she was limited in her ability to work due to post-traumatic stress disorder ("PTSD"), anxiety, and high blood pressure. (AR 265). Ms. Beck's Title II application was denied initially on April 18, 2016, and upon reconsideration on August 10, 2016. (AR 117-18, 127-28). At Ms. Beck's request, a hearing was held on October 17, 2017, before Administrative Law Judge ("ALJ") Michael Leppala, (AR 59, 152). At the hearing, Ms. Beck's attorney made an oral request that the ALJ "escalate" her claim for Title XVI benefits. (AR 16). The ALJ orally

agreed to hear both Ms. Beck's Title II and Title XVI claims at the hearing, despite the Title XVI claim having not yet undergone the initial stages of review. *Id.*

Ms. Beck and Phunda Yarbrough, an impartial vocational expert ("VE"), testified at the hearing and Ms. Beck was represented by her attorney Stephanie Spanhel. (AR 59). On April 18, 2018, the ALJ issued his decision, finding Ms. Beck not disabled at any time between her alleged onset date, March 10, 2015, through the date of his decision. (AR 53). Ms. Beck appealed the ALJ's denial of her Title II and Title XVI claims, and the Appeals Council granted her request for review. (AR 12).

On March 9, 2019, the Appeals Council issued two written orders. (AR 11, 16). In the first order, the Appeals Council dismissed Ms. Beck's Title XVI claim and sent the application back to the field office for an initial determination. (AR 20). In the second order, the Appeals Council adopted all the ALJ's findings regarding Ms. Beck's Title II claim. (AR 13). The Appeals Council therefore concluded that the ALJ's determination of non-disability for Ms. Beck's Title II claim should be affirmed. (AR 15).

Ms. Beck, now represented by attorney Benjamin Decker, argues in her Motion the ALJ made the following errors: (1) he erred in his opinion analysis of Ms. Beck's treating provider Andrea Ensign, C.N.P, and did not properly consider Ms. Beck's childhood psychiatric records.; (2) he incorrectly assigned "great weight" to the opinion of state agency consultant Jason Gunter, Ph.D.; and (3) he failed to include limitations in interacting with supervisors and coworkers in the residual functional capacity ("RFC") assessment. (Doc. 21 at 19-25).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ did not commit reversible error, the Court finds Ms. Beck's Motion

shall be **DENIED** and this case shall be **DISMISSED WITH PREJUDICE**.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.  Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) (2015), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in his past

relevant work, the ALJ will proceed to step five of the evaluation. At step five, the Commissioner bears the burden of showing that the claimant can perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

In her disability application, Ms. Beck claimed she was limited in her ability to work due to PTSD, anxiety, and high blood pressure. (AR 265). At step one, the ALJ determined Ms. Beck had not engaged in substantial gainful activity since March 10, 2015, the alleged disability onset date. (AR 42). At step two, the ALJ found Ms. Beck had the following severe impairments: anxiety disorder, PTSD, and alcohol and substance addiction disorder. (AR 43). At step three, the ALJ determined that none of Ms. Beck's impairments, solely or in combination, met or equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 43-45).

At step four, the ALJ found Ms. Beck had no exertional limitations but had the following non-exertional limitations: she could perform simple and more complex tasks of 1 to 4 steps with routine supervision; she could make commensurate work-related decisions; she could respond appropriately to supervision, coworkers, and work situations; she could deal with routine changes in the work setting; she could maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday; and she had no restrictions in her ability to interact with coworkers and supervisors, but was limited to occasional interaction with the general public. (AR 45).

In formulating Ms. Beck's RFC, the ALJ stated that he considered Ms. Beck's

symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 45). The ALJ also stated he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (AR 45). The ALJ concluded that some of Ms. Beck's impairments could be expected to cause her alleged symptoms, but found the intensity, persistence, and limiting effects Ms. Beck described were not entirely consistent with the evidence in the record. (AR 48).

In evaluating the opinion evidence, the ALJ stated that he gave "little weight" to the opinion of state agency psychological consultant Howard Atkins, Ph.D., who reviewed Ms. Beck's disability file at the initial-determination level. (AR 48). On the other hand, the ALJ afforded "great weight" to the opinion of state agency psychological consultant Dr. Gunter, who reviewed Ms. Beck's file upon reconsideration. (AR 48). Similarly, the ALJ afforded the opinions of state agency medical consultants Randal Reid, M.D., and Evette Burich, M.D., "great weight." (AR 49). The ALJ afforded the opinion of Ms. Ensign, Ms. Beck's treating provider, "little weight" because her opinion utilized a "checkbox form," she failed to "adequately provide an explanation" for her opinion, and she relied "heavily" on Ms. Beck's "self-reported symptoms." (AR 49). Finally, the ALJ considered the Third-Party Function Report submitted by Ms. Beck's mother, Son Graack. (AR 49). The ALJ assigned "little weight" to Ms. Graack's report, finding it was contrary to other medical evidence in the record. (AR 49).

After examining Ms. Beck's medical reports and other evidence in the record, the ALJ found Ms. Beck was unable to perform any of her past relevant work and proceeded to step five of the SEP. (AR 51). At this step, the ALJ noted Ms. Beck was 32

years old on the alleged disability onset date and was therefore classified as a "younger individual" in accordance with the Regulations. (AR 51). The ALJ also determined Ms. Beck had at least a high school education and was able to communicate in English. (AR 52).

Further, the ALJ explained that if Ms. Beck had the RFC to perform the full range of unskilled work at all exertional levels, a finding of "not disabled" would be directed by Medical-Vocational Rule 204. (AR 52). However, Ms. Beck's ability to perform work at all exertional levels was comprised by her non-exertional limitations. (AR 52). Therefore, the ALJ relied on the testimony of the VE to determine the extent these non-exertional limitations eroded her occupational job base. (AR 52). The ALJ noted the VE testified that an individual with Ms. Beck's same age, education, work experience, and RFC could perform the jobs of a janitor, meat clerk, and dishwasher. (AR 52). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the testimony of the VE and concluded that because Ms. Beck was capable of performing work existing in significant numbers in the national economy she was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 52-53).

Ms. Beck appealed the ALJ's decision to the Appeals Council. (AR 223, 226). On March 9, 2019, the Appeals Council issued two orders. In the first order, the Appeals Council dismissed her Title XVI application and remanded it to the field office for further adjudication. (AR 6-7). In the second order, the Appeals Council adopted the ALJ's findings regarding Ms. Beck's Title II application and affirmed her denial of benefits. (AR 12-15). Ms. Beck's petition to this Court followed. (Doc. 1).

## IV. Analysis

Ms. Beck presents three arguments in her Motion before the Court. First, Ms.

Beck contends the ALJ failed to consider "important medical evidence" in weighing the opinion of her treating provider, Ms. Ensign. (Doc. 21 at 19). Relatedly, she alleges the ALJ failed to consider her childhood psychiatric records from the Naval Medical Center of San Diego. *Id.* at 24. Second, Ms. Beck asserts the ALJ erred in affording Dr. Gunter's opinion "great weight." *Id.* at 22. Third, Ms. Beck argues the ALJ failed to "include any limitations in interacting with supervisors and co-workers in the RFC," contrary to overwhelming evidence in the record. *Id.* at 23.

In response, the Commissioner argues Ms. Beck erroneously challenges the ALJ's decision, even though the Appeals Council's order constitutes the Administration's final judgment. (Doc. 26 at 9-10). Nonetheless, the Commissioner contends because the Appeals Council "reasonably assessed [Ms. Beck's] mental RFC based largely on the ALJ's findings through [Ms. Beck's] date last insured," the Appeals Council's decision should be affirmed. *Id.* at 11. The Commissioner similarly combats each of Ms. Beck's additional contentions, alleging the ALJ correctly weighed Ms. Ensign's opinion and properly afforded Dr. Gunter's opinion "great weight." *Id.* at 12-16. In addition, the Commissioner argues the ALJ reasonably considered Ms. Beck's subjective symptoms, her purported social limitations, and relevant medical evidence. *Id.* at 17-18. For these reasons, the Commissioner asserts Ms. Beck's Motion should be denied.

### A. Scope of Judicial Review

In her Motion, Ms. Beck requests the Court review the ALJ's decision on both her applications for disability—her Title II Disability Insurance Benefits ("DIB") application and her Title XVI Supplemental Security Income ("SSI") application. *See* (Doc. 21 at 1) (arguing for review of her "Title II and Title XVI" claims). In his Response, the

Commissioner argues Ms. Beck's SSI claim has not reached a final decision and is therefore not reviewable by this Court. (Doc. 26 at 9-10). Additionally, the Commissioner contends that because Ms. Beck erroneously challenges the ALJ's decision, which does not constitute the final decision, her Complaint before this Court should be summarily dismissed. *Id.*

Under 42 U.S.C. § 405(g), a federal court may review a Social Security claimant's denial of benefits after the Administration has reached a "final decision." The United States Supreme Court has interpreted the statutory mandate for a "final decision" as requiring claimants to proceed through initial and reconsideration determinations, a hearing before an ALJ, and review by the Appeals Council. *See Smith v. Berryhill*, 139 S.Ct. 1765, 1772 (2019) (explaining 42 U.S.C. § 405(g) "provides for judicial review of 'any final decision ... made after a hearing.'"). Only after a claimant "has proceeded through all four steps on the merits ... [does] § 405(g) entitle[] him to judicial review in the federal district court." *Id.*

Ms. Beck filled her SSI application just after the hearing. (AR 354-355). In its review, the Appeals Council found that Ms. Beck's SSI claim had not undergone the full adjudicatory review, and therefore, the Appeals Council remanded for an initial review. (AR 19-20). As a result, Ms. Beck's SSI claim has not reached a "final decision on the merits" and thus is not eligible for review before this Court.

Unlike her SSI claim, Ms. Beck's DIB claim has undergone the full adjudicatory process and a final decision has been issued in the form of the Appeals Council's order. *See* 42 U.S.C. § 405(g). Thus, the Court is tasked with evaluating the Appeals Council's order for purposes of judicial review. However, the Appeals Council adopted the entirety of the ALJ's findings with respect to Ms. Beck's DIB claim. *See* (AR 13) ("The Council

adopts all of the Administrative Law Judge's ... findings regarding the claimant's Title II claim through her date last insured.").  Therefore, the Court will evaluate the substance of the ALJ's decision to determine whether it was supported by substantial evidence and free of legal error. Furthermore, because only Ms. Beck's DIB application is under review, the relevant period at issue is her alleged onset date, March 10, 2015, through her date last insured, December 31, 2015.

Finally, the Commissioner argues the Court should deny Ms. Beck's Motion because she incorrectly challenges the ALJ's decision, which is not a final decision and therefore unreviewable. (Doc. 26 at 9-10). In her Reply, Ms. Beck clarifies her intent to challenge the Appeals Council's order. *See* (Doc. 27 at 1). Specifically, Ms. Beck argues that because the Appeals Council's order is substantively equivalent to the ALJ's decision, her reliance on the ALJ's opinion is not in contravention to the Court's scope of review. *Id.* In light of Ms. Beck's clarification, the Court denies the Commissioner's argument that Ms. Beck's Motion should be summarily denied on these grounds.

**B.  Ms. Ensign's Opinion and Ms. Beck's Childhood Treatment Records**

In her first argument for remand, Ms. Beck asserts the ALJ improperly weighed Ms. Ensign's opinion. (Doc. 21 at 19). Specifically, Ms. Beck contends the ALJ failed to properly consider Ms. Beck's mental abnormalities, including her complaints of auditory hallucinations; and he impermissibly rejected Ms. Ensign's opinion on the basis it relied too heavily on Ms. Beck's self-reported symptoms. *Id.* 19-21. Relatedly, Ms. Beck alleges the ALJ's failure to discuss her childhood psychiatric records from the Naval Medical Center of San Diego constitutes a fatal error. *Id.* at 24.

The Commissioner counters that the ALJ did not err in his assessment of Ms. Ensign's opinion. (Doc. 26 at 13-15). In particular, he notes Ms. Ensign's opinion has

little relevance given that it is dated nearly two years after her date last insured. *Id.* at 13. Further, he contends the ALJ properly considered Ms. Beck's complaints of auditory hallucinations, acknowledged Ms. Beck's childhood mental health history, and gave valid reasons for discounting Ms. Beck's subjective complaints. *Id.* at 14-15. As for the Naval Medical Center records, the Commissioner argues these records are not relevant to the period at issue, as they predate Ms. Beck's application by fifteen years. (Doc. 26 at 18). Moreover, the Commissioner maintains the ALJ was aware of Ms. Beck's childhood mental health history, as he acknowledged her childhood diagnosis of schizophrenia, her symptoms as a child, and he considered reports from Ms. Beck's mother. *Id.* at 18-19

In order to qualify for benefits under an application for disability insurance benefits, a claimant must establish disability on or before the date last insured. 20 C.F.R. §§ 404.101, 404.120, 404.315. The Tenth Circuit has made clear "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status." *See, e.g., McKinney v. Barnhart*, 62 F. App'x 284, 285-86 (10th Cir. 2003) (internal citation and quotation marks omitted) (unpublished). As such, the Tenth Circuit has found that evidence dated after the date last insured is generally not relevant to an ALJ's finding of disability on or before the date last insured.

For example, the Tenth Circuit affirmed an ALJ's denial of benefits where the claimant was diagnosed with a brain tumor six months after the date last insured and there were no medical records that "show[ed the claimant] was *actually* disabled prior to the expiration of her insured status." *McKinney*, 62 F. App'x at 285-86 (emphasis in original) (alterations made). Similarly, in *Candelario v. Barnhart* the Tenth Circuit found no error in the ALJ's decision to give little weight to the claimant's treating physicians'

opinions where "[t]he letters significantly post-date the relevant time period." 166 F. App'x 379, 386 (10th Cir. 2006) (unpublished); *see also Rhodes v. Barnhart*, 117 F. App'x 622, 625-26 (10th Cir. 2004) (stating it "is well established that a remand will not be granted… if the new evidence shows only a subsequent deterioration of the previously nondisabling condition.") (internal citation and quotation marks omitted) (unpublished).

In this case, Ms. Beck's date last insured was December 31, 2015. (AR 254). Ms. Ensign began treating Ms. Beck in March 2017, and her opinion is dated October 2017, nearly two years after her date last insured. (AR 1310-1311). Given the fluid nature of mental health symptoms, Ms. Ensign's records and opinion provide little probative value in assessing Ms. Beck's allegations of disability for the relevant period. *See, e.g., Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (unpublished) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). While the ALJ may have erred in including Ms. Ensign's statement and treatment notes in his decision, the Appeals Council's order circumscribes the ALJ's findings to the period at issue—March 10, 2015 through December 31, 2015. Accordingly, the Court finds Ms. Ensign's records and opinion are not relevant to Ms. Beck's disability claim for the period at issue.

Similarly, the Naval Medical Center records pre-date Ms. Beck's alleged onset date by fifteen years, and thus, have little bearing on Ms. Beck's mental condition during the relevant time period. Therefore, the ALJ's failure to discuss these records does not constitute reversible error. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[A]n ALJ is not required to discuss every piece of evidence.") (alteration made).

Moreover, the ALJ discussed other records containing similar content, including Ms. Beck's childhood mental health diagnoses, symptoms, and complaints. (AR 47, 50).

In summary, the Court finds Ms. Ensign's records and opinion are not relevant to Ms. Beck's disability claim for the period at issue. Additionally, Ms. Beck has not shown how the ALJ erred in failing to discuss her Naval Medical Center records. For these reasons, the Court denies Ms. Beck's arguments on these issues.

### C. Dr. Gunter's Opinion

Next, Ms. Beck argues the ALJ erred in giving great weight to Dr. Gunter's opinion. (Doc. 21 at 22). In particular, she asserts the ALJ incorrectly stated Dr. Gunter had access to the entire record. *Id.* Rather, at the time Dr. Gunter rendered his opinion, Ms. Beck contends Ms. Ensign's treatment records and the Naval Medical Center records were absent from the file. *Id.* Additionally, Ms. Beck contends the ALJ incorrectly afforded Dr. Gunter's opinion greater weight over Ms. Ensign's opinion despite Dr. Gunter having not examined Ms. Beck. *Id.* at 22-23. In his Response, the Commissioner argues the ALJ reasonably gave great weight to Dr. Gunter's opinion. (Doc. 26 at 16). Specifically, he alleges Ms. Beck's childhood records and Ms. Ensign's records are not relevant because they both significantly pre-date and post-date the relevant time period. *Id.* at 16. Moreover, even if these records are relevant, the Commissioner asserts Dr. Gunter considered Ms. Beck's childhood treatment via other records in the file at the time of his opinion. *Id.*

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). That is, when assessing a plaintiff's RFC, an ALJ must explain what

weight he assigns to each opinion and why. *Id.* Additionally, ALJs are required to

provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p[1],

1996 WL 374183, at *5. As part of this analysis, the Regulations set forth the following

factors ALJs should consider when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c)[2]; *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01

(10th Cir. 2003) (the "§ 404.1527 factors"). While not every factor will be applicable in

each case, the ALJ must at least provide an explanation that is "sufficiently

specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation

omitted).

In explaining the assigned weight to Dr. Gunter's opinion, the ALJ provided

several rationales. (AR 48). First, Dr. Gunter had access to the record; second, he was

familiar with Social Security disability standards; and third, his opinion was consistent

with the record. (AR 48-49). These rationales comport with the § 404.1527 factors

enumerated above. Specifically, it describes the degree to which Dr. Gunter's opinion is

supported by relevant evidence, the consistency between his opinion and the record at

the time of his review, and it highlights Dr. Gunter's specialized knowledge of Social

---

1.     SSR 96-5p was rescinded for applications filed on or after March 27,
2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Ms. Beck's application was filed
before March 27, 2017, SSR 96-5p applies.
2.     These regulations apply because Ms. Beck's applications were filed prior
to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

Security disability standards.

While the ALJ did not discuss every factor, his analysis provided a rationale that was "sufficiently specific to [be] clear to any subsequent reviewers." *See Langley*, 373 F.3d at 1119. Indeed, the ALJ provided a detailed explanation of the evidence consistent with Dr. Gunter's opinion. For example, the ALJ found Ms. Beck's anxiety and PTSD had stabilized with treatment, and Ms. Beck reported minimal anxiety, a calmer mood, less irritability, and improved relationships with others. (AR 49). While not relevant after the Appeals Council's order circumscribed the period at issue, the ALJ also discussed findings from 2016 and 2017. (AR 49). In 2016, as a result of her improved symptoms, Ms. Beck's physician discharged her into the care of her primary care provider. (AR 49). In 2017, the ALJ noted Ms. Ensign's findings similarly showed improved symptoms, such as a good mood, euthymic affect, and fair judgment, insight, and memory. (AR 49). Finally, the ALJ indicated he considered Ms. Beck's allegations of nervousness and irritability and found that when weighing her allegations alongside the objective evidence, Dr. Gunter's opinion adequately accounted for all these limitations. (AR 49).

Rather than attacking whether the ALJ's analysis was sufficiently specific, Ms. Beck asserts the ALJ incorrectly stated Dr. Gunter had access to the entire record, thereby making the ALJ's analysis of Dr. Gunter's opinion fatally flawed. (Doc. 21 at 22). Yet, as described previously in *supra*, Section B the records in question—Ms. Beck's Naval Medical Center records and Ms. Ensign's records—significantly pre-date and post-date the relevant time period. Contrary to Ms. Beck's assertions, these records therefore have little probative value in assessing Ms. Beck's symptoms and functional limitations during the relevant time period. *See McKinney*, 62 F. App'x at 285-86 ("[T]he

relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status.") (internal citation and quotation marks omitted).

Therefore, whether Dr. Gunter reviewed these records would have little impact on his imposed limitations. Similarly, Ms. Beck's contention that the ALJ improperly afforded Dr. Gunter's opinion greater weight over Ms. Ensign's opinion suffers from the same deficiency. Indeed, Ms. Ensign's opinion bears little relevance to the period at issue, for the reasons outlined previously, *supra*, Section B. While the ALJ may not have provided this as a rationale, such a conclusion is clear given the Appeals Council's order circumscribing the period at issue. *See* (AR 12-13).

In short, the ALJ cited to several relevant factors in his assessment of Dr. Gunter's opinion, he provided sufficiently clear and specific evidence in support of his analysis, and given the time period at issue, Ms. Ensign's records and Ms. Beck's childhood records provide little probative value. For these reasons, the Court denies Ms. Beck's second argument.

### D. Social Limitations in the RFC

Finally, Ms. Beck contends the ALJ erred in failing to include or explain an omitted limitation of interacting with supervisors and coworkers in the RFC assessment. (Doc. 21 at 23). According to Ms. Beck, this error is particularly stark given the ALJ's citation to Ms. Beck's difficulty with authority figures when finding she was moderately limited in interacting with others in the B-criteria analysis. *Id.* The Commissioner responds that the ALJ reasonably weighed all the evidence, which led the ALJ to conclude Ms. Beck could interact appropriately with coworkers and supervisors. *Id.* at 18.

As discussed, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citing *Zoltanski*, 372 F.3d at 1200) (alteration made). In a decision supported by substantial evidence, an ALJ is not required to discuss all of the evidence; however, he is required to discuss the uncontroverted evidence he chose not to rely on, significantly probative evidence he rejected, and the evidence supporting his decision. *Clifton*, 79 F.3d at 1009.

With regard to consistency between an ALJ's B-criteria findings and his RFC assessment, Social Security Ruling 96-8p notes "the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. Accordingly, the Tenth Circuit has denied a claimant's request for remand where the ALJ's B-criteria analysis contained a limitation that was omitted from the RFC assessment. *Nixon v Barnhart*, 49 F. App'x 254, 256 (10th Cir. 2002) (unpublished). In *Nixon*, the court found the restrictions provided in the ALJ's RFC assessment adequately accounted for the omitted limitations omitted from the B-criteria analysis. *Id.* According to the court, the relevant inquiry was whether the "ALJ's

assessment of [the claimant's] RFC limitations is reasonably consistent with his PRT assessment." *Id.* (alterations made).

In this case, the relevant inquiry is whether the ALJ's RFC is supported by substantial evidence, while also considering whether the ALJ's B-criteria analysis is reasonably consistent with the RFC assessment. In supporting his RFC assessment, the ALJ discussed uncontroverted evidence, significantly probative evidence, and evidence supporting his decision. For example, the ALJ discussed Ms. Beck's testimony that she had difficulty around others, she was easily angered, and in the past, she had gotten into verbal altercations with her supervisors. (AR 45). The ALJ also acknowledged Ms. Beck's statement to a provider that her anxiety caused her to be fearful of leaving her home, though she was not anxious in large crowds. (AR 46). Additionally, the ALJ noted Ms. Beck complained to her provider of hand tremors, tense feelings, paranoia, and anger. (AR 46). The ALJ also acknowledged mental status examinations showing Ms. Beck with an anxious mood. (AR 46).

Conversely, the ALJ outlined evidence showing her symptoms improved with medication. (AR 46). For instance, in June 2015 Ms. Beck reported that her anxiety was stable, and she could communicate with people; her relationship with her roommate had improved; she enjoyed leaving her home; and she was looking for work. (AR 46). In July 2015, Ms. Beck reported she was doing odd jobs, such as sign holding for businesses. (AR 46). In September 2015, Ms. Beck continued to report that her medications helped her anxiety, and in her mental status examination, her mood was good, brighter, and she was smiling. (AR 46). In December 2015, Ms. Beck's provider documented her mood was stable, and Ms. Beck did not have any concerns with her anxiety. (AR 47). Finally, the ALJ gave great weight to Dr. Gunter's opinion, in which he excluded

limitations on Ms. Beck's ability to interact with coworkers and supervisors. (AR 48).

Considering all the evidence, including past reports of Ms. Beck's defiance toward supervisors, the ALJ determined Ms. Beck did not require work restrictions with coworkers and supervisors. While this Court or another ALJ may have come to a different conclusion, substantial evidence only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Langley*, 373 F.3d at 1118. In this case, the ALJ provided relevant evidence such that a reasonable mind would accept Ms. Beck's ability to interact appropriately with co-workers and supervisors. While there is a "possibility of drawing two inconsistent conclusions from [this]" evidence, such an outcome "does not prevent [the] findings from being supported by substantial evidence." *See Lax*, 489 F.3d at 1084 (citing *Zoltanski*, 372 F.3d at 1200) (alterations made).

As for consistency between the ALJ's B-criteria analysis and RFC assessment, the ALJ found Ms. Beck was moderately limited in social interactions and in turn restricted her ability to interact with the public. While the ALJ considered Ms. Beck's history of defiance, and cited this evidence when assessing the severity of her social limitations in steps 2 and 3, after considering all the evidence he ultimately rejected this restriction. For the reasons described previously, this omitted limitation is supported by substantial evidence. Thus, because the ALJ's B-criteria findings are reasonably consistent with his RFC assessment the Court finds the ALJ did not err in explicitly mentioning Ms. Beck's history of defiance in the B-criteria analysis.

In short, the ALJ provided sufficient relevant evidence that a reasonable mind would find acceptable to support the ALJ's RFC assessment, which excluded restrictions on work with coworkers and supervisors. For these reasons, the Court finds

the ALJ's RFC is supported by substantial evidence, and therefore, the Court denies Ms. Beck's request for remand on this basis.

## V.    Conclusion

For the foregoing reasons, the Court finds the ALJ did not err in his assessments of Ms. Ensign's and Dr. Gunter's opinions, the ALJ's RFC is supported by substantial evidence, and the ALJ considered all relevant medical evidence. **IT IS THEREFORE ORDERED** that Ms. Beck's *Motion to Reverse and/or Remand*, (Doc. 21), is **DENIED** and this case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE